State v. Barbour

---

STATE OF NORTH CAROLINA v. RAYMOND EDWARD BARBOUR

No. 7915SC378

(Filed 18 September 1979)

1. **Criminal Law § 75.9— defendant in custody—inculpatory statement to wife—volunteered statement**

   The trial court in a homicide prosecution did not err in allowing an officer to testify that defendant stated to his wife in the presence of the officer, "I shot him . . . . You know what happened," since the statement was made in response to an inquiry by defendant's wife; the officer asked defendant no questions; and defendant's statement was volunteered and not the product of custodial interrogation.

**2. Criminal Law § 102.11— prosecutor's jury argument—comment on defendant's guilt—no impropriety**

There was no merit to the defendant's contention that the private prosecutor, during his jury argument, improperly expressed his personal opinion that defendant was "guilty as sin," since defense counsel immediately objected when the prosecutor uttered the word "believe"; the prosecutor thereafter confined his expression to a contention that defendant was guilty; and counsel was properly permitted to contend that the jury should find defendant guilty.

**3. Criminal Law § 102.1— prosecutor's jury argument—comment on defense of accident—no impropriety**

The prosecutor's jury argument in a homicide prosecution that defendant and his lawyer fabricated for trial defendant's assertion that he slipped on a curb and that the gun he was holding then fired accidentally was not improper.

**4. Jury § 9— lack of attention by juror—disqualification—explanation unnecessary—substitution of alternate juror proper**

The trial court did not abuse its discretion in disqualifying a juror on the ground of "lack of attention" and in substituting an alternate juror at the conclusion of the final arguments of counsel; and the court was not required to explain "lack of attention."

APPEAL by defendant from *Lewis, Judge*. Judgment entered 22 September 1978 in Superior Court, ALAMANCE County. Heard in the Court of Appeals on 28 August 1979.

Defendant was tried on a bill of indictment proper in form for the second degree murder of William Samuel Abner. Upon his plea of not guilty, the State offered evidence which tended to show that, on the night of 13 June 1974, defendant intentionally shot Abner in the back as Abner walked away from defendant. Witnesses for the State testified that defendant leaned across the open rear door of the car in which he and Abner had been riding, and shot Abner when Abner refused to stop walking away as defendant had demanded.

Defendant's evidence tended to show that he accidentally shot Abner while trying to "arrest" Abner on a "drug bust." Defendant, a private citizen, testified that Police Chief William F. Miles of Graham, North Carolina, had authorized him to work on a drug case on the evening of June 13 and to use his pistol "in making an arrest, and that he could use it only for his own self-protection and for no other purpose." Defendant suspected Abner of being heavily involved in drug trafficking and attempted to

---

---

"arrest" Abner that evening after finding a large quantity of pills in Abner's possession. Abner refused to cooperate with defendant. Defendant alleged that he then prepared to fire a warning shot as Abner walked away from him. He testified that his foot slipped off the curb as he prepared to fire, causing the gun to discharge as he stumbled into the car.

Defendant was found guilty of second degree murder and was sentenced to a prison term of 25 to 30 years from which he appealed.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*Van Camp, Gill & Crumpler, by James R. Van Camp and Douglas R. Gill, for defendant appellant.*

HEDRICK, Judge.

[1] Defendant first assigns error to the Court's allowing Officer Hoggard to testify that the defendant stated to his wife in the presence of the officer, "I shot him. . . . You know what happened." When defendant objected to testimony of what he said, the Court conducted a *voir dire* examination to determine the admissibility of the offered evidence.

The substance of the *voir dire* testimony was as follows:

Officer Hoggard testified that he advised defendant of his Miranda rights when he first arrived at the scene of the shooting:

> I advised him that he had a right to remain silent. That anything he said would be used in a court of law. I advised him he had a right to an attorney. If he could not afford an attorney, one would be appointed for him by the state. And, I also advised him that he had a right to stop talking to me at anytime he wanted to.

Defendant did not request an attorney, nor did he refuse to talk to Officer Hoggard. He told the officer that "he had to stop Bill Abner. That Bill Abner was getting away with his drugs and he had to stop him and that's the reason he shot him."

Defendant was then taken to the police station to be booked. He was not re-advised of his Miranda rights. Later on that night,

defendant's wife appeared and asked Officer Hoggard if she could see her husband. Officer Hoggard initially refused her request, but subsequently agreed to accompany her to the booking room. Officer Hoggard testified that he insisted on being present during the visit for security reasons. As they walked into the booking room, the following conversation occurred between defendant and his wife:

Mrs. Barbour: "Raymond, tell me it's not true."

Defendant: "Yes, I shot him."

Mrs. Barbour: "Why?"

Defendant: "Because you know what happened."

At the conclusion of Officer Hoggard's testimony, the court found that the statements by defendant to his wife were made in response to her question, "Tell me it's not true", and that Officer Hoggard had asked no questions of defendant. The Court therefore concluded that defendant's statement was "spontaneous", and "not the product of custodial interrogation, even though it was made at a time when he was in custody."

Defendant excepted to the Court's ruling and contends on appeal that he was not "effectively" advised of his *Miranda* rights and that his statement to his wife was involuntary. We disagree. The decision of the North Carolina Supreme Court in *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971), is dispositive of this issue.

In *Fletcher*, the defendant confessed his guilt to the victim of the crime. He made his statement while in jail and in the presence of a police officer, who failed to recite the *Miranda* warnings to defendant. However, the confession resulted from a question put to defendant by the victim, and not by the police officer. The Court found that the defendant's statement was not the result of custodial interrogation. Therefore, the *Miranda* warnings were not required. *State v. Morris*, 275 N.C. 50, 165 S.E. 2d 245 (1969); *State v. Meadows*, 272 N.C. 327, 158 S.E. 2d 638 (1968).

We hold in the case at bar that defendant's statement to his wife was volunteered in response to the question she asked. The statement was not the result of custodial interrogation, and the

failure to give the *Miranda* warnings did not render the statement inadmissible.

Moreover, even if the statement was erroneously admitted, the error was harmless. Defendant does not contend that he did not shoot Abner. There is no reasonable possibility, therefore, that the statement contributed to his conviction. *State v. Fletcher, supra.*

[2] Defendant next assigns error to remarks made by the private prosecutor in his closing argument to the jury. Citing *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967), he argues that the prosecutor improperly expressed his personal opinion that defendant was "guilty as sin." Defendant's assertion in this regard is clearly unsound. Immediately upon the prosecutor's uttering the word "believe", defense counsel objected, and the prosecutor thereafter confined his expression to a contention that defendant was guilty. Counsel was properly permitted to contend that the jury find defendant guilty. *State v. Britt*, 291 N.C. 528, 231 S.E. 2d 644 (1977).

[3] Defendant also attacks that portion of the final argument wherein the prosecutor maintained that defendant and his lawyer fabricated for trial defendant's assertion that he slipped on the curb. The prosecutor pointed out that defendant had not mentioned "slipping" to his wife on the night of the shooting; he then commented,

> He didn't even open his mouth about it being an accident. And, the first time that this defendant has opened his mouth about slipping and being an accident, is when he's been on trial in this Court. That's his lawyer's defense. . . . That's a defense that's been thought up since it happened that night.

According to defendant, this language was "calculated to cause prejudice." He contends that the prosecutor traveled outside of the record and impermissibly commented upon the defendant's silence while in custody. This argument misses the point. The reference, if any, to defendant's silence served merely to point out that defendant failed to characterize or explain the shooting as an accident to his wife when she asked him why he had shot Abner.

In *State v. Williams*, 276 N.C. 703, 712, 174 S.E. 2d 503, 509 (1970), it is said:

> In this jurisdiction wide latitude is given to counsel in the argument of contested cases. Moreover, what constitutes an abuse of this privilege must ordinarily be left to the sound discretion of the trial judge. *State v. Bowen*, 230 N.C. 710, 55 S.E. 2d 466. . . .

We hold that the prosecutor's argument was not "sufficiently grave to be prejudicial in order to entitle defendant to a new trial." *State v. Parks*, 14 N.C. App. 97, 100, 187 S.E. 2d 462, 464 (1972), *cert. denied*, 281 N.C. 157, 188 S.E. 2d 366 (1972); *State v. Seipel*, 252 N.C. 335, 113 S.E. 2d 432 (1960).

[4] Finally, defendant contends that the Court erred in disqualifying a juror and substituting an alternate juror at the conclusion of the final arguments of counsel. He argues that the judge's disqualification of the original juror on grounds of "lack of attention" is not a permissible basis under N.C. General Statutes § 15A-1215 (a). Defendant also asserts error in the judge's failure to explain what he meant by "lack of attention."

G.S. § 15A-1215(a) provides in pertinent part:

> If before final submission of the case to the jury, any juror dies, becomes incapacited *or disqualified, or is discharged for any other reason*, an alternate juror becomes a juror, in the order in which selected, and serves in all respects as those selected on the regular trial panel. [Emphasis added.]

Furthermore, the statute provides that alternate jurors "must be sworn and seated near the jury with equal opportunity to see and hear the proceedings. They must attend the trial at all times with the jury, and obey all orders and admonitions of the judge."

It is well settled that the decision as to a juror's continued competency to serve rests within the trial judge's sound discretion. *State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975); *State v. Moore*, 24 N.C. App. 582, 211 S.E. 2d 470 (1975). There was no necessity for the trial judge in this case to explain "lack of attention." We hold that his action did not constitute an abuse of his discretion and, therefore, no reversible error was committed.

---

We hold that defendant had a fair trial free from prejudicial error.

No error.

Judges VAUGHN and ARNOLD concur.