SHIRLEY C. YORK AND DONALD MATTHEW YORK v. NORTHERN HOSPITAL DISTRICT OF SURRY COUNTY; RICHARD R. GUIDETTI, M.D.; AND PIEDMONT ANESTHESIA ASSOCIATES, P.A.

No. 8717SC460

(Filed 22 December 1987)

1. Physicians, Surgeons & Allied Professions § 15.1— malpractice—exclusion of certain evidence—no error

In an action to recover for injuries sustained during the birth of a child, the trial court did not err in sustaining defendants' objections to an overbroad question calling for a neurologist's opinion as to "what went wrong"; sustaining defendants' objections to questions put to an expert witness on redirect examination as to administering glucose to the infant in question when the subject had not been introduced on direct or cross-examination; refusing to permit a nurse to testify as to the standard of care required of a surgeon or anesthesiologist in the absence of a proper foundation therefor; and excluding testimony by an expert witness in nursing concerning the standards of care applicable to hospitals similarly situated to defendant hospital, since evidence establishing those standards had already been received.

2. Physicians, Surgeons & Allied Professions § 20.2— malpractice—instructions on contentions—request properly denied

The trial court did not err in denying plaintiffs' requests for instructions consisting of detailed and specific statements of plaintiffs' contentions with respect to each of many ways in which plaintiffs alleged that defendants were

negligent, since the trial court is not required to state the contentions of the parties.

**3. Jury § 9— seating alternate—juror's prior inattention—no abuse of discretion**

The trial court did not abuse its discretion in excusing a juror and substituting an alternate juror whose inattentiveness had been noted by the court earlier in the trial.

**4. Physicians, Surgeons & Allied Professions § 20.2— malpractice—duration of duty to provide care—instruction not required**

In an action to recover for injuries sustained during the birth of a child, the trial court did not err in refusing to instruct with respect to the duty of a health care provider to continue treatment of a patient until treatment is no longer required or until the relationship is terminated by mutual consent, since the evidence neither required nor supported such an instruction.

**5. Physicians, Surgeons & Allied Professions § 15— malpractice—reading from textbook not allowed—no error**

In an action to recover for injuries sustained during the birth of a child, the trial court did not err by refusing to allow a nurse to read statements from a textbook regarding the care of a mother in labor and of a newborn infant, since plaintiffs laid no foundation which would tend to show that the standards described in the textbook were the same as those of hospitals similarly situated to defendant hospital.

**6. Physicians, Surgeons & Allied Professions § 20.2— childbirth—malpractice—instructions as to proximate cause of child's injuries improper**

In an action to recover for injuries sustained during the birth of a child, the trial court erred in its instructions as to whether the child's injuries proximately resulted from negligence of defendant hospital, since the jury could have understood that defendant hospital was liable for injuries to the child only if it found that the hospital was negligent in its treatment of plaintiff mother in a manner specified by the court.

APPEAL by plaintiffs from *Rousseau, Judge*. Judgment entered 5 May 1986 in Superior Court, SURRY County. Heard in the Court of Appeals 30 November 1987.

Plaintiffs, who are husband and wife, filed separate complaints alleging that plaintiff Shirley York and the York's minor child, Matthew Howard York, sustained serious and permanent injuries as a result of negligent medical treatment rendered to them by defendants Northern Hospital District of Surry County (Hospital), Dr. Richard R. Guidetti, and Piedmont Anesthesia Associates, P.A. (Piedmont). Shirley York sought to recover damages for her own personal injuries; Donald York sought damages for loss of consortium. Both parties sought to recover damages for

loss of services of the minor child and for past and prospective expenses for the child's medical care.

The two actions were joined. Evidence at trial tended to show that on 29 June 1981, plaintiff Shirley York was 38 years old and was at term with her second pregnancy. Because her first pregnancy in 1970 had required a classical Caesarean section, she was scheduled for a second Caesarean section at defendant Hospital on 1 July 1981. She was informed by her obstetrician that in the event she should experience any sign of labor before the scheduled procedure, she should contact him and go immediately to the hospital. On 25 June 1981, Mrs. York contacted Dr. Guidetti, an anesthesiologist and president of defendant Piedmont, in preparation for the surgery. She advised Dr. Guidetti that she was a repeat Caesarean patient and that she had been instructed not to labor.

At 9:00 p.m. on 29 June 1981, Mrs. York began to experience labor pains and went to defendant Hospital, arriving at approximately 10:15 p.m. She was taken to the labor room at 10:35 p.m., where she was attended by nurse Joan Vest. Nurse Vest took Mrs. York's history and was informed by Mrs. York that she was a repeat classical Caesarean section case. When nurse Vest went off duty at 11:15 p.m., nurse Shirley Danley began attending Mrs. York. Nurse Danley was likewise informed of Mrs. York's repeat classical Caesarean status.

At about midnight, Mrs. York's attending obstetrician was notified of her admission to the Hospital. He ordered that she be given Seconal, a sedative, but did not come to the Hospital. At approximately 1:30 a.m. on 30 June, nurse Danley notified the doctor that Mrs. York's contractions had become stronger. The doctor arrived at the hospital sometime after 1:30 a.m. He ordered that Mrs. York be given fluids intravenously and that she be administered Stadol, a barbiturate for pain relief which has the effect of causing respiratory depression. By approximately 2:20 a.m., the fetal heart rate, which had been strong at the time of Mrs. York's admission to the Hospital, could not be detected with a fetascope but could be heard with a monitor. Mrs. York was taken to the operating room at 2:35 a.m. There was evidence tending to show that by this time, Mrs. York's uterus had ruptured.

Faye Bryant, a certified registered nurse-anesthetist employed by Piedmont and "on-call" on 30 June 1981, was called at approximately 2:00 a.m. and informed that her services were needed in order to perform a Caesarean section delivery. She arrived at the Hospital at 2:35 a.m. Defendant Guidetti was not called by any hospital personnel and nurse Bryant did not know until her arrival at the hospital that Mrs. York had a ruptured uterus.

At 3:04 a.m., Matthew Howard York was delivered by Caesarean section. At the time of his birth, he was not breathing, had a faint heartbeat, and had a blue color. Because only one physician was present and was involved in caring for Mrs. York, it was necessary for nurse-anesthetist Bryant to attend to the infant. She inserted an endotrachael tube and administered oxygen; after five minutes the infant's color, heart rate, and muscle tone were improved, after 12 minutes he was breathing satisfactorily and the endotrachael tube was removed. Nurse-anesthetist Bryant then resumed assisting the obstetrician in performing an emergency hysterectomy on Mrs. York. No one from defendant Hospital provided further medical care for the infant until approximately 4:42 a.m., when he was transferred to Baptist Hospital in Winston-Salem. He now suffers from mental retardation and cerebral palsy.

The plaintiffs offered additional evidence, through various expert witnesses, tending to show that the rupture of Mrs. York's uterus and her subsequent hysterectomy occurred as a direct and proximate result of defendant Hospital's failure, through its agents, to promptly and properly perform a repeat classical Caesarean section, to attend to Mrs. York's needs following the rupture of her uterus, and to assemble a competent and adequate medical staff for these purposes. Plaintiffs also offered expert medical testimony tending to show that the permanent injuries to Matthew York were a direct result of Hospital's failure, through its agents, to render appropriate care both before and after his birth, as well as the failure of all defendants to render proper medical care after his birth. Plaintiffs' expert medical evidence further tended to show that the care provided by defendants in these respects did not rise to the minimum applicable standards of care. Defendants Guidetti and Piedmont offered evidence tending to generally show that the care rendered both Mrs. York and

Matthew York by nurse-anesthetist Bryant was within the applicable standards of practice and that any injuries which Matthew received resulted from the negligence of others prior to his birth rather than the treatment provided by Bryant. Defendant Hospital offered evidence tending to show that the treatment rendered Mrs. York and the child by its personnel was within the applicable standards of practice and that their injuries resulted from the negligence of others.

The following issues were submitted to and answered by the jury as indicated:

1. Did the plaintiff, Shirley C. York, suffer personal injury and damage as a result of the negligence of the defendant, Hospital?

ANSWER: No.

2. What amount of damages, if any, is plaintiff, Shirley C. York, entitled to recover from defendant, Hospital, for her personal injuries?

ANSWER:

3. Did the plaintiff, Donald Matthew York, lose the consortium of his wife, Shirley C. York, as a result of personal injury which she sustained?

ANSWER:

4. What amount of damages, if any, is plaintiff, Donald Matthew York, entitled to recover from defendant, Hospital, for the loss of consortium of his wife, Shirley C. York?

ANSWER:

5. Was the minor child, Matthew York, injured and damaged as result of the negligence of the defendant, Hospital?

ANSWER: No.

6. Was the minor child, Matthew York, injured and damaged as a result of the negligence of the defendant, Richard R. Guidetti, M.D.?

ANSWER: No.

7. Was the minor child, Matthew York, injured and damaged as a result of the negligence of Faye Bryant?

ANSWER: NO.

8. What amount of damages, if any, are plaintiffs, Shirley C. York and Donald Matthew York, entitled to recover for the additional expenses of supporting Matthew York until he attains age eighteen?

ANSWER:

From a judgment for defendants entered on the verdict, plaintiffs appealed.

*Daniel J. Park for plaintiffs-appellants.*

*Walter J. Etringer for defendant-appellee, Northern Hospital District of Surry County.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James G. Billings and John D. Madden, for defendants-appellees, Richard R. Guidetti, M.D., and Piedmont Anesthesia Associates, P.A.*

MARTIN, Judge.

Through twenty-seven questions presented in their brief, plaintiffs attempt to argue forty-three assignments of error. Of the twenty-seven questions, eight relate solely to plaintiffs' claims against defendants Guidetti and Piedmont, ten relate solely to plaintiffs' claims against defendant Hospital and the nine remaining questions relate to assignments of error involving all of the claims. After reviewing plaintiffs' arguments, we find no error with respect to their claims against defendants Guidetti or Piedmont, nor do we find error with respect to their claims against defendant Hospital to recover for damages arising out of the personal injuries sustained by Mrs. York. For reasons that we shall state herein, however, we do find error with respect to plaintiffs' claim against defendant Hospital for damages resulting from injuries sustained by their minor child. Accordingly, we grant plaintiffs a new trial on their claims against Hospital for loss of services and medical expenses incurred as a result of defendant Hospital's alleged negligent injury of their son.

## I.

### Plaintiffs' Claims Against All Defendants

Plaintiffs argue that the trial court erred by denying their motions for change of venue for the convenience of witnesses and the promotion of the ends of justice, made pursuant to G.S. 1-83, and for removal to Forsyth County made pursuant to G.S. 1-84. The record contains no exception to the trial court's order denying these motions. Accordingly, plaintiffs have failed to preserve the alleged errors for review. App.R. 10.

[1] Plaintiffs assign error to a number of the trial court's evidentiary rulings excluding testimony which they offered at the trial. We have examined each of their arguments and find no prejudicial error.

Plaintiffs argue that the trial court improperly sustained defendants' objections to the following question asked of Dr. Sheff D. Olinger, an expert neurologist, by plaintiffs' counsel:

> Q. (Mr. Park) In your opinion, and based upon reasonable medical certainty, what, from reading the medical reports, hospital charts and other medical records in this case, went wrong? And can you describe for us what, in your opinion, went wrong in the delivery of Matthew Howard York by his mother on June 29 and June 30, 1981?

> MR. MADDEN: Objection to form.

> MR. ETRINGER: Objection to form.

As phrased, the question is clearly objectionable as overbroad. Moreover, it does not relate to any relevant standard of care, a violation of which would permit a finding of medical negligence. Thus, we find no abuse of discretion in the court's ruling. *See* G.S. 8C-1, Rule 611(a).

Plaintiffs also argue that the trial court erred by sustaining defendants' objections to questions asked during plaintiffs' redirect examination of Dr. Hal Stuart, one of their expert witnesses, as to whether the administration of glucose to the infant was required by the standards of care applicable to nurse-anesthetist Bryant. Redirect examination is generally limited to the subject matter elicited on direct and cross-examination. *State v. Pearson,*

59 N.C. App. 87, 295 S.E. 2d 499 (1982), *disc. rev. denied*, 307 N.C. 472, 299 S.E. 2d 227 (1983). The subject of intravenous administration of fluids to the infant was not raised during Dr. Stuart's direct or cross-examination. Whether or not to permit it to be raised on redirect examination was a matter within the discretion of the trial judge. *Id*. We find no abuse of that discretion in this instance.

Plaintiffs also assign error to the trial court's refusal to permit nurse Joyce Parker, head surgical nurse at defendant Hospital, to testify as to the standard of care required of a surgeon or anesthesiologist. However, plaintiff did not lay a proper foundation for such testimony by showing that nurse Parker was familiar with the standards applicable to the surgeon or anesthesiologist. *See* G.S. 90-21.12; *Haney v. Alexander*, 71 N.C. App. 731, 323 S.E. 2d 430 (1984), *cert. denied*, 313 N.C. 329, 327 S.E. 2d 889 (1985). Accordingly, we find no abuse of discretion in this ruling.

Plaintiffs also assign error to the exclusion of testimony by Sandra Luffman, an expert witness in nursing, concerning the standards of care applicable to hospitals similarly situated to defendant Hospital, as well as standards applicable to anesthesiologists and nurse-anesthetists, under circumstances similar to those in the present case. As plaintiffs admit in their brief, however, evidence establishing these standards had already been received through the testimony of Dr. Stuart and Dr. Stanley Gall. Accordingly, assuming *arguendo* that the exclusion of nurse Luffman's testimony was error, it could not have been prejudicial. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978); *Leary v. Nantahala Power and Light Co.*, 76 N.C. App. 165, 332 S.E. 2d 703 (1985). This argument is without merit.

Plaintiffs have argued that the trial court erred with respect to certain of its instructions to the jury regarding Mrs. York's claims against Dr. Guidetti and Piedmont for her own personal injuries. Plaintiffs, however, have not directed us to, and we have been unable to find, any objection made to these instructions at trial. They are precluded, therefore, from assigning error to these instructions and we decline to consider their argument with respect thereto. App.R. 10(b)(2).

[2] Plaintiffs also contend that the trial court erred by refusing their requests for instructions "with regard to the defendants'

physicians and nurses possessing the requisite degree of learning, skill and ability necessary to practice their profession and instructing the jury as to the specific acts of negligence on the part of the defendants." The instructions requested by plaintiffs consist of detailed and specific statements of plaintiffs' contentions with respect to each of many ways in which plaintiffs alleged that defendants were negligent. The trial court is not required to state the contentions of the parties, *Daniels v. Jones*, 42 N.C. App. 555, 257 S.E. 2d 120, *disc. rev. denied*, 298 N.C. 567, 261 S.E. 2d 120 (1979); nor is it required that the court state the evidence or explain the application of the law thereto. G.S. 1A-1, Rule 51(a) (1985 Cum. Supp.). We find no error in the trial court's refusal of the requested instructions and overrule this assignment of error.

[3] During the second week of the trial, one of the jurors was involved in an automobile accident and sought medical treatment at defendant Hospital. The trial court excused the juror and, over plaintiffs' objections, substituted the first of two alternate jurors. Plaintiffs assign error, arguing that at an earlier point in the trial, the court had remarked concerning the inattentiveness of the alternate juror. Whether or not a juror should be disqualified from service on grounds of inattentiveness is a matter within the sound discretion of the trial court. *State v. Barbour*, 43 N.C. App. 38, 258 S.E. 2d 72 (1979), *disc. rev. denied*, 299 N.C. 122, 261 S.E. 2d 924 (1980). We find no such abuse of discretion in the present case. This assignment of error is overruled.

II.

Plaintiffs' Claims Against Defendants Guidetti and Piedmont

Several assignments of error argued by plaintiffs relate only to their claims against defendants Guidetti and Piedmont. Plaintiffs argue that the trial court excluded admissible evidence and declined to give instructions to which they were entitled. We have reviewed their arguments and find no error prejudicial to plaintiffs.

Plaintiffs challenge rulings of the trial court sustaining defendants' objections to portions of the deposition testimony of Dr. Olinger. Each of the three questions to which objections were sustained was improperly phrased. Moreover, two of the questions called for Dr. Olinger's interpretation of a contract through which

Piedmont provided anesthesia services to defendant Hospital, an area beyond that in which Dr. Olinger qualified to testify as an expert. We find no abuse of discretion in the court's ruling with respect to the testimony of Dr. Olinger.

By plaintiffs' arguments VI, XIII, and XV, they contend that the trial court committed reversible error by excluding evidence which plaintiffs sought to elicit from defendant Guidetti, and from their experts, Drs. Gall and Stuart. Assuming *arguendo* that exclusion of the testimony was error, no prejudice resulted therefrom. All of the evidence was either received through other witnesses, was actually favorable to defendants, or was irrelevant to the issues before the jury. These assignments of error are overruled.

[4] Plaintiffs also assign error to the trial court's refusal of their request that the jury be instructed with respect to the duty of a health care provider to continue treatment of a patient until treatment is no longer required or until the relationship is terminated by mutual consent. *See* NCPI—Civil 809.30. The evidence neither requires nor supports such an instruction. Although Mrs. York had discussed her impending Caesarean section with Dr. Guidetti, there was no evidence that he was contacted with respect to her emergency delivery on 30 June and, therefore, he could not be found to have unilaterally terminated the physician-patient relationship with respect to the anesthesia services which he was obligated to provide. Moreover, Dr. Guidetti was an officer and employee of defendant Piedmont; there is no evidence to support a finding that Piedmont ever attempted to terminate its obligation to provide anesthesia services to plaintiff. As there was no evidence to support this instruction, the trial court properly refused to give it. *Link v. Link,* 278 N.C. 181, 179 S.E. 2d 697 (1971). This assignment of error is overruled.

## III.

### Plaintiffs' Claims Against Defendant Hospital

Plaintiffs present four questions with respect to the exclusion of testimony concerning plaintiffs' claims against defendant Hospital. Plaintiffs argue that the trial court erred by excluding Dr. Olinger's deposition testimony regarding the standard of care required of defendant Hospital. They also assign error to the exclu-

sion of testimony by Dr. Stuart regarding the standard of care required of defendant Hospital with respect to notification of Mrs. York's attending physician of her condition. Without elaborating upon the subject testimony, we conclude that the trial court's rulings could not, even if error, have been prejudicial because substantially the same evidence was presented through other testimony. *State v. Smith, supra; Leary, supra.* These assignments of error are overruled. Similarly, we overrule plaintiffs' exception to the exclusion of nurse-anesthetist Bryant's opinion as to whether "the hospital waited too long to do this surgery" on Mrs. York, as we see no reasonable possibility that the jury's verdict would have been different had the testimony been admitted. *See Warren v. City of Asheville,* 74 N.C. App. 402, 328 S.E. 2d 859, *disc. rev. denied,* 314 N.C. 336, 333 S.E. 2d 496 (1985).

[5] By another assignment of error, plaintiffs argue that the trial court erred by refusing to allow nurse Luffman to read statements from a textbook entitled *Maternity Care of the Nurse and the Family,* Second Edition, regarding the care of a mother in labor and of a newborn infant. Plaintiffs argue that this testimony was admissible under G.S. 8C-1, Rule 803(18). We disagree.

G.S. 8C-1, Rule 803, delineates instances in which evidence will not be excluded simply because such evidence is hearsay. It does not, however, annul the requirement of G.S. 8C-1, Rule 402, that the evidence be relevant. Plaintiffs in this case laid no foundation that would tend to show that the standards described in the textbook were the same as those of hospitals similarly situated to defendant Hospital. The mere fact that the textbook was used in Surry Community College does not establish its relevance. Until the proper foundation was established, the information in the textbook had no relevance to the issues before the jury.

With respect to the jury instructions concerning the alleged negligence of defendant Hospital, plaintiffs contend that the jurors should have been instructed with respect to the Hospital's duty to exercise reasonable care in the selection of the physicians assigned to render treatment to Mrs. York and Matthew. In our view, however, the evidence offered by plaintiffs was not sufficient to support a finding that defendant Hospital assigned any

physician to treat Mrs. York upon the occasion of her emergency admission and surgery; the attending obstetrician was a private physician and a member of the obstetrical group chosen by Mrs. York. Therefore, the instruction was not required. *Link, supra.*

[6]  We find merit, however, in plaintiffs' contentions regarding the instructions given the jury with respect to the fifth issue — whether Matthew York's injuries proximately resulted from negligence of defendant Hospital. Because the instructions given the jury were incomplete and potentially misleading, we must order a new trial on that issue.

The trial court's instructions with respect to the fifth issue consisted of the following:

> Now, MEMBERS of the JURY, you heard me describe negligence and proximate cause and the standard of care and wherein the plaintiff alleges that the hospital was negligent in regard to Mrs. York's claim. Those same rules apply with regard to issue number five, that is, was Matthew injured as a result of the negligence of the hospital? So, I am not going to repeat that for you at this time, but you will recall what I said about negligence and proximate cause and *the acts of negligence which the plaintiff contends the hospital committed.* And if the plaintiff has proven to you, that is, Mr. and Mrs. York have proven to you — this is their claim for reimbursement of additional living expenses for the boy until he reaches eighteen. So, if Mr. and Mrs. York have proven to you by the evidence and by its greater weight that the hospital was negligent in any one or more of those respects I've enumerated, then it would be your duty to answer that issue yes. However, if you are not so satisfied or find the evidence evenly balanced or cannot tell where the truth of the matter is, it would be your duty to answer that issue no. (Emphasis supplied.)

The specific acts of negligence referred to by the judge were those given with respect to the first issue — whether Mrs. York was injured as a result of the Hospital's negligence — and were as follows:

> So, MEMBERS of the JURY, I instruct you that if the plaintiff has proven by the greater weight of the evidence that

the hospital was negligent in that the hospital accepted Mrs. York for delivery of her baby by caesarian section, was negligent by failing to exercise its best judgment in the treatment and care of the plaintiff, or that the hospital, in admitting her for the delivery of the child, was negligent by failing to use reasonable care and diligence in the application of its knowledge and skill to the care of the plaintiff, or that the hospital was negligent by failing to act in accordance with the standards of practice used by hospitals with similar training and experience in Mt. Airy or other similar communities in that the hospital failed, through its agents and employees, to properly notify the obstetrician of the condition of the plaintiff, Mrs. York, after her arrival at the hospital, or the hospital failed to provide minimum standards for the number and type of medical care providers necessary in this case to compose a competent surgical team, and failed to commence their duties within a reasonable period of time after notification, or Nurse Danley breached her duty not to obey instructions of a physician which are obviously negligent, which were deferring the immediate repeat classical caesarian section upon Mrs. York when she was in labor and at term and the administration of a drug Seconal, a sedative, having knowledge that the plaintiff, Mrs. York, was to have a repeat classical Caesarian section. And, I say, MEMBERS of the JURY, that if the plaintiff has proven by the greater weight of the evidence that the defendant hospital was negligent in any one or more of those regards, and if the plaintiff has further proven by the greater weight of the evidence that such negligence, if any, was a proximate cause of her injury, then it would be your duty to answer this first issue yes, that is, in favor of Mrs. York.

In apt time, plaintiffs objected to the instructions as given on the grounds that the instructions did not permit the jury to consider, in determining the issue, evidence that defendant Hospital's postnatal care of the infant did not conform to applicable standards. Plaintiffs' objections were renewed when, upon the jurors' request for reinstruction upon the fifth issue, the court repeated essentially the same instruction.

Although the trial judge is no longer required to apply the law to the evidence, G.S. 1A-1, Rule 51(a) (1985 Cum. Supp.), if the

judge undertakes to do so he must instruct completely and without omission. *See State v. Rainey*, 236 N.C. 738, 74 S.E. 2d 39 (1953) (court not required to instruct on a subordinate feature, but if judge elects to do so, he must charge accurately). In addition to the alleged negligence of defendant Hospital in caring for Mrs. York after her arrival at the hospital and in connection with the delivery of the infant, plaintiff alleged and offered evidence tending to show that the care and treatment of the infant after his birth did not conform to the applicable standards in several respects. The court, however, declined to instruct the jury as to the Hospital's alleged breach of duty in these respects. As a result, the jury could have understood that it could find defendant Hospital liable for injuries to the child only if it found that the Hospital was negligent in its treatment of Mrs. York in a manner specified by the court. In our view, this possibility was sufficiently substantial as to constitute error prejudicial to plaintiffs, entitling them to a new trial upon the issues of defendant Hospital's negligent treatment of Matthew York, and the damages resulting to plaintiffs as a proximate result thereof.

IV.

In view of our decision, we decline to address plaintiffs' remaining assignments of error as they are unlikely to recur at the new trial. Moreover, because of our disposition of this case as to defendants Guidetti and Piedmont, we need not consider the cross-assignments of error raised by them.

V.

In summary, we find no error in the trial of plaintiffs' claims against defendants Richard R. Guidetti, M.D., and Piedmont Anesthesia Associates, P.A. We likewise find no error in the trial of plaintiffs' claims against defendant Northern Hospital District of Surry County for damages resulting from its alleged negligent care and treatment of Shirley C. York. For the reasons stated above, however, we award plaintiffs a new trial upon their claims against defendant Hospital for damages resulting from the Hospital's alleged negligent treatment of Matthew Howard York.

No error in part, new trial in part.

Chief Judge HEDRICK and Judge GREENE concur.