STATE OF NORTH CAROLINA v. RONALD KENNETH WILLIAMS

No. COA01-1187

(Filed 16 July 2002)

### 1. Evidence— hearsay—murder victim's state of mind

The trial court did not err in a first-degree domestic murder prosecution by admitting testimony that the victim had moved in with the witness because the victim was fed-up with defendant's alleged infidelities, that altercations occurred between the victim and defendant, and that the victim had said to come and check on her if she did not return from her last meeting with defendant within thirty minutes. The testimony was probative of the victim's state of mind, and the court admitted the testimony only after conducting a voir dire hearing and concluding that the probative value outweighed any prejudicial effect.

### 2. Homicide— first-degree murder—evidence of premeditation and deliberation

A first-degree murder defendant's motion to dismiss for insufficient evidence of premeditation and deliberation was correctly

STATE v. WILLIAMS

[151 N.C. App. 535 (2002)]

denied where defendant brought a .357 revolver to a meeting with the victim, stated to an officer that he shot the victim because "she was going to take my kids," and there was no evidence of provocation on the victim's part.

Appeal by defendant from judgments entered 6 June 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 13 June 2002.

*Attorney General Roy Cooper, by Assistant Attorney General K.D. Sturgis, for the State.*

*Gay, Stroud & Jackson, L.L.P., by Andy W. Gay and Darren G. Jackson, for defendant-appellant.*

MARTIN, Judge.

Defendant was convicted of first degree murder of Peatrice Latrice Alston, and assault with a deadly weapon with the intent to kill, inflicting serious injury, upon police officer Matthew May, both offenses occurring on 6 August 2000. The trial court entered judgments upon the verdicts imposing concurrent sentences of life imprisonment without parole for first degree murder and a minimum of 73 months and a maximum of 97 months for assault with a deadly weapon with intent to kill inflicting serious injury. Defendant appeals.

The evidence at trial tended to show that defendant and Ms. Alston had lived together in Franklinton for a number of years, and were the biological parents of two children. Although defendant and Ms. Alston had planned to marry, their relationship ended and Ms. Alston moved out of their shared home three or four months prior to August 2000. She moved to Wake Forest and began living with her sister and Shamika Bledsoe.

On the evening of 6 August 2000, Ms. Alston entered a convenience store in Wake Forest and asked the clerk, Patrick Coogan, if he would call the police. She told Coogan that her boyfriend was acting "erratic." Coogan stated that he called the police but that Ms. Alston would not take the phone and talk because she said her boyfriend, who was in a car outside the store, might see her. Coogan said Ms. Alston seemed "very, very nervous" and that she was "really upset." Coogan told her to remain in the store but she paid for her items and returned to her car. Moments later Coogan heard a "loud noise like a backfire."

Wake Forest Police Officer May testified that he responded to a domestic disturbance call placed from an Express USA Mart gas station. He arrived, approached the vehicle and asked if everything was OK. May testified that Ms. Alston answered "yeah," then "looked over and looked back at me," which May interpreted as a sign that she wanted to communicate with him. May asked her to step out of the car; he reached to open the door, and at that moment "there was an explosion in the car." May saw that Ms. Alston was slumped over and had a "tremendous amount of blood on her." He also realized that he had been shot in the hand. He called for immediate back-up and moved to the back of the car, where he saw defendant sitting in the vehicle holding a chrome revolver. Defendant then threw the weapon out of the car. Officer May ordered defendant out of the vehicle and onto the ground. After reading defendant his *Miranda* rights, May asked defendant why he shot the victim; according to May, defendant said he shot her because "she was going to take my kids."

Defendant subsequently gave a written statement to Detective J. M. Leonard in which he said that he became upset upon learning that Ms. Alston had moved their children to Wake Forest and planned to send them to school there. He asked Ms. Alston to meet him to discuss the matter. He told Detective Leonard that he carried a .357 revolver with him to the meeting. Defendant stated that he and Ms. Alston met at a Food Lion, and she then drove to a gas station. According to defendant, she entered the store and "stayed in the store for a long period of time." When she returned to the car, the car would not start; at that point, Officer May arrived and approached the car. According to defendant, "[t]hat is when I lost my mind and shot her not realizing what I did until it was too late."

Shamika Bledsoe, a friend of Ms. Alston, testified that Ms. Alston had moved in with her because she was "fed up" with defendant's alleged infidelities; Ms. Bledsoe also testified that altercations had occurred between Ms. Alston and defendant. According to Ms. Bledsoe, defendant called Ms. Alston on the evening of 6 August 2000 and asked her to meet him so the two of them could talk. Ms. Bledsoe stated that after Ms. Alston finished the conversation with defendant, she prepared to leave and told Ms. Bledsoe that if she did not return in thirty minutes, "we needed to come and check on her and—and make sure she was okay."

Defendant neither testified nor offered evidence.

I.

**[1]** Defendant first argues the trial court erred by allowing Shamika Bledsoe to testify about statements made to her by Ms. Alston, contending the testimony was inadmissible hearsay and that any probative value was outweighed by the prejudicial effect of the testimony. North Carolina Rule of Evidence 803(3) provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), . . ." is not excluded by the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(3).

> The state of mind exception allows for the introduction of hearsay evidence which tends to "indicate the victim's mental condition by showing the victim's fears, feelings, impressions or experiences," so long as the possible prejudicial effect of such evidence does not outweigh its probative value under Rule 403.

*State v. Corpening*, 129 N.C. App. 60, 66, 497 S.E.2d 303, 308, *disc. review denied*, 348 N.C. 503, 510 S.E.2d 659 (1998) (citations omitted). The availability of the declarant under this rule is immaterial. N.C. Gen. Stat. § 8C-1, Rule 803(3).

In the present case, Shamika Bledsoe was permitted to testify that Ms. Alston asked to move in with her because she was "fed up" with defendant's alleged infidelities, and that altercations had occurred between her and defendant. After defendant called Ms. Alston on the evening of 6 August 2000, according to Ms. Bledsoe, Ms. Alston prepared to leave and told her that if she did not return in thirty minutes, "we needed to come and check on her and—and make sure she was okay." The trial court instructed the jury

> [t]hese statements may be considered by you not for the truth of what was asserted therein. But rather they may be considered by you as evidence of Ms. Alston's state of mind and as evidence to explain actions that she may subsequently have taken. You may accept it for those purposes and those purposes only.

Ms. Bledsoe's testimony was probative of Ms. Alston's state of mind prior to her meeting defendant. Ms. Bledsoe's testimony explained Ms. Alston's feelings and conduct and revealed her fear of defendant, particularly her fear of the imminent encounter. The trial court did not err in admitting these statements into evidence pursuant to Rule of Evidence 803(3).

As noted above, however, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403. "[T]he determination of whether relevant evidence should be excluded is a matter left to the sound discretion of the trial court, and the trial court can be reversed only upon a showing of abuse of discretion." *State v. Wallace*, 351 N.C. 481, 523, 528 S.E.2d 326, 352-53, *cert. denied*, 531 U.S. 1018, 148 L. Ed. 2d 498 (2000) (citation omitted). The trial court admitted the testimony only after a *voir dire* hearing and, after hearing the proffered questions and answers, found that the probative value of the testimony outweighed any prejudicial effect and overruled defendant's objection. On this record, we discern no abuse of discretion in the trial court's ruling. The assignment of error is overruled.

## II.

**[2]** Defendant next argues the trial court erred by denying his motion to dismiss the charge of first degree murder because there was insufficient evidence of premeditation and deliberation. We disagree.

In reviewing the denial of a motion to dismiss, this Court

must examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. Evidence is "substantial" if a reasonable person would consider it sufficient to support the conclusion that the essential element exists.

*State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). The test is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citations omitted). Murder in the first degree is defined by statute as the "willful, deliberate, and premeditated killing" of another person. N.C. Gen. Stat. § 14-17 (2001). To satisfy the element of premeditation, the State must present sufficient evidence indicating that the perpetrator "thought out the act beforehand for some period of time, however short, but no particular amount of time is necessary." *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992) (citation omitted). The element of deliberation requires that "the perpetrator carried out an intent to kill in a cool state of blood and not under the influence of a violent passion or sufficient legal provocation." *Id.* (citation omitted).

Premeditation and deliberation are mental processes which are ordinarily not susceptible to proof by direct evidence. In a

majority of cases, they must be proved by circumstantial evidence. Some of the circumstances from which premeditation and deliberation may be implied are (1) absence of provocation on the part of the deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*Id.* at 565, 411 S.E.2d at 596 (citing *State v. Gladden*, 315 N.C. 398, 430-31, 340 S.E.2d 673, 693 (1986)).

In the present case, the evidence shows that defendant brought a .357 revolver to the meeting with Ms. Alston, indicative of some preparation and intent to do her harm. In his statement to Officer May, defendant said that he shot Ms. Alston because "she was going to take my kids," demonstrating the existence of ill will or previous difficulties between the parties. There was no evidence of provocation on Ms. Alston's part; Officer May testified that she and defendant were sitting in the car together when he arrived. Defendant shot Ms. Alston in the head at point blank range. Taking the evidence in a light most favorable to the State, as we are constrained to do, we hold there was substantial evidence that defendant acted with premeditation and deliberation in shooting Ms. Alston. Defendant's motion to dismiss was properly denied, and his assignment of error is overruled.

No error.

Judges TYSON and THOMAS concur.