NO. COA 14-63

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

STATE OF NORTH CAROLINA

   v.
                               Johnston County
                               Nos. 10 CRS 3725, 53948

MATTHEW HAGERT SALENTINE


Appeal by Defendant from judgment entered 25 October 2012 by Judge William R. Bell in Johnston County Superior Court. Heard in the Court of Appeals 10 September 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Amy Kunstling Irene, for the State.*
>
> *David L. Neal for Defendant.*


STEPHENS, Judge.


Defendant Matthew Hagert Salentine was convicted in Johnston County Superior Court of first-degree murder, first-degree burglary, and robbery with a dangerous weapon, and was sentenced to life imprisonment without parole for the first-degree murder conviction, with judgment arrested on the other two charges. Defendant appeals from the trial court's order denying his motion for a mistrial based on allegations of juror misconduct, contending that the trial court erred in failing to

conduct a further inquiry after removing the juror in question, and in overruling Defendant's objections to the State's closing argument. After careful review, we hold that the trial court did not abuse its discretion in denying Defendant's motion for a mistrial, limiting the scope of its juror misconduct inquiry, or overruling Defendant's objections to the State's closing argument.

*Facts and Procedural History*

The evidence at trial showed that early on the morning of 23 June 2010, Defendant broke into the home of 74-year-old Smithfield resident Patricia Warren Stevens. Defendant later admitted that he intended to steal money and valuables in order to purchase crack cocaine, and that his neighbor, Mrs. Stevens, seemed like an "easy" target because he knew she had been living alone since her dog died several months previously. Contrary to Defendant's expectations, Mrs. Stevens put up a fight and began screaming when she caught him rummaging through her purse. Frightened by the prospect of being recognized, Defendant struck Mrs. Stevens at least thirty-three times with a tire iron, including at least eight blows to her head. When he realized Mrs. Stevens was dead, Defendant attempted to conceal her body by rolling it up in a carpet and moving furniture around. He

then continued to search the home for additional items to steal, ultimately leaving with Mrs. Stevens's Visa credit card, several boxes of her checks, and a pillowcase stuffed with jewelry. Defendant was arrested two days later on 25 June 2010 as he sat in his truck after attempting to deposit into his bank account over $2,000 in checks made payable to him and purportedly signed by Mrs. Stevens. Defendant confessed to the killing later that afternoon during an interview with SBI agents. Subsequent DNA testing revealed that blood found on checkbooks and flip-flops seized from Defendant's vehicle and a tire iron found near the back door of his apartment matched Mrs. Stevens's DNA profile.

Defendant was tried capitally and pled not guilty, arguing diminished capacity and voluntary intoxication as his defense to the charge of premeditated and deliberate first-degree murder. Although he admitted killing Mrs. Stevens after breaking into her house, Defendant contended that he could not have formed the requisite intent to commit the offense due to a combination of crack cocaine addiction, alcohol abuse, and bipolar disorder. During his SBI interview, Defendant claimed he "fell off the wagon" after nearly five years of being sober and admitted to consuming nearly $10,000 worth of crack cocaine in the weeks preceding Mrs. Stevens's murder, financing his binge with an

inheritance from the estate of his grandmother. In addition to being strung-out on crack cocaine, Defendant also consumed a fifth of vodka and some beers shortly before breaking into Mrs. Stevens's home. At trial, mental health experts for the State and the defense diagnosed Defendant with cocaine dependence. Defendant's experts testified that he also suffered from bipolar disorder, that his substance abuse represented a misguided attempt to self-medicate his depression, and that it would be impossible for a person to think or act rationally after consuming so much crack cocaine and alcohol. The State's expert testified that although cocaine can affect one's judgment, it does not completely overwhelm the capacity to reason. He pointed to Defendant's decision to break into Mrs. Stevens's home to obtain money to get more crack and Defendant's actions designed to avoid detection in support of his conclusion that at the time of the offense, Defendant was able to perform intentional acts and make rational decisions. Moreover, the State's expert disputed the bipolar diagnosis, noting that although prolonged cocaine use can cause what appear to be symptoms of mental disorder, Defendant exhibited a clear pattern of functional, stable behavior when not using drugs, thus making a personality disorder with antisocial features the more appropriate

diagnosis. Nonetheless, in light of Defendant's diminished capacity defense, the trial court included an instruction on second-degree murder as a lesser-included offense in its charge to the jury.

On 25 October 2012, after deliberating eleven hours over the course of three days, the jury found Defendant guilty of first-degree murder based on theories of malice, premeditation and deliberation, and felony murder. On 2 November 2012, prior to the conclusion of Defendant's capital sentencing hearing, the trial court received a letter from Jeffrey Saunders, a Florida attorney whose brother-in-law, Brian Scott Lloyd, was a forty-eight-year-old long-haul truck driver who served on Defendant's jury. In his letter, Mr. Saunders informed the court:

> During deliberations, [Lloyd] contacted my wife complaining about one of the female jurors, because she would not agree to find the Defendant guilty. He further informed my wife that the same juror failed to disclose during voir dire that her brother was addicted to drugs. He also stated to my wife that he went online and found out certain information about the Defendant. I informed my wife to tell her brother that he was prohibited from speaking to her or anyone else regarding the case, and he must comply with the Court's instructions. Thereafter, he called my wife on another day and told her that he and the other jurors did not know what the term "malice" meant and asked her to ask me to explain the same. I refused to provide any information to my wife and I

never spoke to her brother about the case. Upon learning of these allegations of juror misconduct, the trial court informed both parties that it intended to remove Lloyd from the jury and that it was going to make an inquiry of him. Defendant's counsel noted that Lloyd had been seen smoking cigarettes during breaks with two other jurors and stated that inquiry of them also seemed appropriate. Defendant also moved for a mistrial, which the trial court denied, explaining that even if a juror had violated the court's rules, the ultimate inquiry was whether that violation was prejudicial to Defendant.

During the inquiry that followed, Lloyd confirmed that he had spoken to his sister after the jury retired to its deliberations, but could not recall the precise date of their conversation. Lloyd initially denied discussing any details about the case with his sister, but eventually acknowledged he had shared with her his frustrations with another juror, explaining, "I told her I had a rough day, we was [sic] deliberating the case. It was getting heated in there basically. That's all I said. No details." When the trial court confronted Lloyd with the Saunders letter, he eventually confirmed that he had told his sister the jury had been at an 11-to-1 standoff, and that the hold-out juror was a female whose brother was

addicted to drugs and was "having a little trouble, crying a lot." Early in the inquiry, the trial court expressed frustration with Lloyd's initial reluctance to answer questions candidly, stating:

> THE COURT: Why do I feel like I'm having to drag this out of you?
>
> [Lloyd]: You're not.
>
> THE COURT: I started out by asking you if you'd talked to anybody about this and you said no and then I'm asking you particular things that were disclosed in this letter –
>
> [Lloyd]: I was thinking around here.
>
> THE COURT: Let me finish. And that as I started asking you about specific things, you then remembered them.

However, as the inquiry continued, Lloyd repeatedly denied the remaining allegations contained in the Saunders letter. Lloyd denied conducting any online research about Defendant or the case, and claimed that he did not know how to use a computer. Lloyd also denied having asked his sister about "malice," and stated instead that he had been having trouble with the word "mitigating" but never specifically asked her to ask Mr. Saunders for assistance. Lloyd further denied having spoken to any other member of the jury, including the two men he had been seen smoking with, about any of these issues.

Following the inquiry, the trial court removed Lloyd from the jury and replaced him with an alternate. Defendant again moved for a mistrial and, alternatively, requested that the trial court make further inquiries of the other jurors. The court denied Defendant's motion for a mistrial and explained that, based on Lloyd's answers, it did not believe there was any need to conduct any further inquiry. Defendant's sentencing hearing resumed shortly thereafter, and the jury ultimately recommended a sentence of life imprisonment without parole, which the trial court imposed on 2 November 2012.

*Juror Misconduct*

Defendant first argues that the trial court abused its discretion by denying his motion for a mistrial based on juror misconduct and refusing Defendant's request to make further inquiry into whether other jurors received prejudicial outside information from Lloyd. We disagree.

A mistrial must be declared "if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2013). In examining a trial court's decision to grant or deny a motion for mistrial on the basis of juror

-9-

misconduct, we review for abuse of discretion. *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). An abuse of discretion occurs "only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Dial*, 122 N.C. App. 298, 308, 470 S.E.2d 84, 91, *disc. review denied*, 343 N.C. 754, 473 S.E.2d 620 (1996).

When juror misconduct is alleged, it is the trial court's responsibility "to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the defendant." *State v. Aldridge*, 139 N.C. App. 706, 712, 534 S.E.2d 629, 634, *appeal dismissed and disc. review denied*, 353 N.C. 269, 546 S.E.2d 114 (2000). "Misconduct is determined by the facts and circumstances in each case," *State v. Drake*, 31 N.C. App. 187, 190, 229 S.E.2d 51, 54 (1976), and this Court has held that "[n]ot every violation of a trial court's instruction to jurors is such prejudicial misconduct as to require a mistrial." *State v. Wood*, 168 N.C. App. 581, 584, 608 S.E.2d 368, 370 (citation omitted), *disc. review denied*, 359 N.C. 642, 614 S.E.2d 923 (2005). The trial court is vested with the "discretion to determine the

procedure and scope of the inquiry." *State v. Burke*, 343 N.C. 129, 149, 469 S.E.2d 901, 910 (1996). On appeal, we give great weight to its determinations whether juror misconduct has occurred and, if so, whether to declare a mistrial. *State v. Boyd*, 207 N.C. App. 632, 640, 701 S.E.2d 255, 260 (2010). Its decision "should only be overturned where the error is so serious that it substantially and irreparably prejudiced the defendant, making a fair and impartial verdict impossible." *State v. Gurkin*, __ N.C. App. __, __, 758 S.E.2d 450, 454 (2014)(quoting *Bonney*, 329 N.C. at 73, 405 S.E.2d at 152).

In the present case, Defendant contends that the combination of the Saunders letter, Lloyd's initial reluctance to testify candidly, and the possibility of a hold-out juror provides substantial reason to believe that prejudicial outside information was brought into the jury's deliberations. This means that, according to Defendant's interpretation of our Supreme Court's decision in *State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991), the trial court was required to either declare a mistrial or continue its inquiry by questioning the entire jury to determine whether the other jurors were exposed to outside prejudicial information. Therefore, Defendant argues, the trial court abused its discretion by accepting "at face

value" Lloyd's denials of Mr. Saunders's allegations that he conducted online research and asked for clarification about the meaning of "malice." As a result, Defendant claims his fundamental constitutional right to an impartial jury was denied.

At the outset, we note it is well established that "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal." *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) (citation omitted), *overruled in part on other grounds by State v. Hooper*, 358 N.C. 122, 591 S.E.2d 514 (2004). Thus, because Defendant did not raise his constitutional arguments at trial, we lack jurisdiction to consider them now as they have not been preserved for appellate review.

Defendant's argument that the trial court abused its discretion in denying his motion for a mistrial and declining to conduct further inquiry essentially revolves around questioning the credibility of Lloyd's testimony. This argument ignores the broad deference we are compelled to apply when reviewing the trial court's credibility determinations. As this Court has repeatedly recognized in the context of juror misconduct inquiries, "[t]he trial judge is in a better position to

investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings." *State v. Harris*, 145 N.C. App. 570, 576, 551 S.E.2d 499, 503 (2001) (quoting *Drake*, 31 N.C. App. at 190, 229 S.E.2d at 54).

Furthermore, a careful review of the record does not support Defendant's assertion that the trial court simply accepted Lloyd's testimony "at face value." In order to cast doubt on Lloyd's testimony and, by extension, the trial court's decision to believe it, Defendant emphasizes Lloyd's initial reluctance to admit that he had discussed the case with his sister, and selectively highlights a quote from the bench expressing frustration with having to "drag" the truth out of Lloyd. But viewed in its full context, the trial court's frustration with Lloyd actually shows that it engaged in a searching, skeptical inquiry. Rather than blindly accepting Lloyd's answers, the trial court pushed back repeatedly to demand further clarification. Nevertheless, Lloyd did not waver in denying that he conducted online research, asked about "malice," and discussed outside information with other jurors, and the trial court was ultimately satisfied that no prejudice resulted from his misconduct.

Apart from the Saunders letter, there was no evidence that Lloyd obtained any outside information about the case. Moreover, this Court's prior decisions indicate that, even if taken as true, the allegations in the Saunders letter would not amount to prejudicial misconduct. On the one hand, the Saunders letter does not allege that either Mr. Saunders or his wife provided Lloyd with any information about "malice," whereas Lloyd testified that he actually asked about the definition of "mitigating," but denied finding any outside information about either term. In any event, this Court has previously held that the definitions of legal terms do not constitute outside prejudicial information. *See State v. Patino*, 207 N.C. App. 322, 329–30, 699 S.E.2d 678, 684 (2010). On the other hand, the vague allegation that Lloyd "conducted online research about Defendant" is not sufficient to support a claim that prejudicial juror misconduct occurred. In *Aldridge*, this Court held that the trial court did not abuse its discretion in failing to hold an inquiry into allegations of juror misconduct based solely on hearsay from an anonymous telephone call. 139 N.C. App. at 713, 534 S.E.2d at 635. In *State v. Rollins*, we held that the trial court did not abuse its discretion when it declined to hold an inquiry based on allegations that a juror had been exposed to

prejudicial outside information by watching an unidentified television newscast. __ N.C. App. __, 734 S.E.2d 634 (2012), *affirmed per curiam*, 367 N.C. 114, 748 S.E.2d 146 (2013).

In the present case, the Saunders letter is itself hearsay, given that it describes what Mr. Saunders said his wife said Lloyd told her, and is similarly vague insofar as it does not identify any specific source for Defendant's online research. Lloyd repeatedly denied conducting any online research about Defendant, and testified that he did not know how to use a computer. Although Defendant complains this is simply unbelievable four decades after the advent of the personal computer, we give the trial court's determinations great deference on appeal and, based on the record before us, we do not believe its decision to credit the testimony of a live witness over vague, partially substantiated hearsay was "so arbitrary that it could not have been the result of a reasoned decision." *See Dial*, 122 N.C. App. at 308, 470 S.E.2d at 91. We therefore hold that the trial court did not abuse its discretion when it denied Defendant's motion for a mistrial.

Defendant also puts great emphasis on Lloyd's testimony that there had been a hold-out juror, and contends the trial court abused its discretion in failing to question the other

jurors as to whether they were exposed to prejudicial outside information. In support of this argument, Defendant relies on *Black*, where our Supreme Court held that, "[w]hen there is substantial reason to fear that the jury has become aware of improper and prejudicial matters, the trial court must question the jury as to whether such exposure has occurred and, if so, whether the exposure was prejudicial." 328 N.C. at 196, 400 S.E.2d at 401 (citation omitted). Thus, in the present case, Defendant argues the trial court violated an absolute duty to conduct a further inquiry.

However, Defendant's reliance on *Black* is misplaced. First, it ignores the fact that, in *Black*, our Supreme Court upheld the trial court despite the court's failure to conduct any sort of inquiry into the allegations of juror misconduct before it, explaining that the trial court has "broad discretion to see that a competent, fair and impartial jury is impaneled and rulings in this regard will not be reversed absent a showing of abuse of discretion." *Id.* (citation and internal quotation marks omitted). Moreover, Defendant's argument appears to be based on a common misunderstanding that this Court recently addressed in *Gurkin*. As in the present case, the defendant in *Gurkin* selectively cited our prior holdings to argue that any

allegation of juror misconduct creates an absolute duty for the trial court to investigate. However, as we explained, "there is no absolute rule that a court must hold a hearing to investigate juror misconduct upon an allegation." __ N.C. App. at __, 758 S.E.2d at 454 (quoting *Harris*, 145 N.C. App. at 576–77, 551 S.E.2d at 503). While affirming the trial court's duty to conduct an inquiry where there is substantial reason to fear prejudicial misconduct, *Gurkin* made clear that "[a]n examination of the juror involved in alleged misconduct is not always required, especially where the allegation is nebulous." *Id.* (quoting *Harris*, 145 N.C. App. at 577, 551 S.E.2d at 503). As this Court previously explained,

> [t]he circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely [a] matter of suspicion, it is purely a matter in the discretion of the presiding judge.

*Aldridge*, 139 N.C. App. at 713, 534 S.E.2d at 634. In the present case, the trial court did not issue written findings. This Court has held, however, that "[a] denial of motions made because of alleged juror misconduct is equivalent to a finding that no prejudicial misconduct has been shown." *Id.* Furthermore, the record supports such a finding. There was no evidence that

Lloyd ever discussed outside information with other jurors: Lloyd testified that he did not, and the Saunders letter does not allege otherwise. If the trial court was satisfied, based upon Lloyd's responses and its own observations, that there was no substantial reason to fear that the jury was exposed to prejudicial outside information, then it was well within the trial court's discretion to end its inquiry and proceed to sentencing. *See Burke*, 343 N.C. at 149, 469 S.E.2d at 910. Thus, Defendant's argument fails.

Finally, Defendant urges this Court to consider the harm that juror misconduct threatens to the judicial system as a whole, citing as support our decision in *Drake*. While it is true that, in *Drake*, we recognized that "[b]asic principles of proper juror conduct should not be ignored by the trial court" and that "[r]eversible error may include not only error prejudicial to a party but also error harmful to the judicial system," the present case is easily distinguishable. 31 N.C. App. at 192–93, 229 S.E.2d at 55. In *Drake*, we held that the trial court abused its discretion where it neither questioned the juror who allegedly engaged in misconduct, nor made any other investigation into the claim of juror misconduct. Here, by contrast, the trial court conducted an investigation and

determined after questioning Lloyd that there was no danger of prejudicial misconduct to Defendant. As we do not believe the trial court abused its discretion in reaching this determination, we do not agree that Lloyd's misconduct harmed the judicial system as a whole. Defendant's arguments based upon juror misconduct are overruled.

*Closing Argument*

Defendant next argues that the trial court improperly overruled his objections to three portions of the State's closing argument, which he contends were prejudicial.

The standard of review for assessing an alleged improper closing argument where opposing counsel lodged a timely objection is whether the trial court abused its discretion by failing to sustain the objection. *State v. Murrell*, 362 N.C. 375, 392, 665 S.E.2d 61, 73 (2008), *cert. denied*, 556 U.S. 1190, 173 L. Ed. 2d 1099 (2009). When applying the abuse of discretion standard in this context, we determine first whether the challenged remarks were improper, and, if so, whether they were "of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." *State v. Peterson*, 361 N.C. 587, 607, 652 S.E.2d 216, 229 (2007), *cert. denied*, 552 U.S. 1271, 170 L. Ed. 2d 377 (2008).

Here, Defendant argues that the trial court abused its discretion by allowing the prosecutor to repeatedly emphasize the crime's brutality and characterize it as one of the most "brutal" and "gruesome" murder cases in the history of the community. Defendant's first objection came near the beginning of the State's closing argument. After insisting that the case was about the decisions and choices Defendant made, the prosecutor argued:

> [Defendant's] acts and his decisions resulted in the murder of Patricia Stevens, 74-year[-] old woman of dignity and grace who was absolutely vulnerable and his acts caused one of the most gruesome and violent murders this community has ever seen.

After the trial court overruled Defendant's objection, the prosecutor reiterated that this case was about the decisions and choices Defendant made. Defendant objected again as the prosecutor was arguing that the facts showed Defendant acted with premeditation and deliberation. Specifically, regarding Defendant's use of grossly excessive force and the infliction of wounds even after the victim was felled, the prosecutor argued:

> Use of grossly excessive force. Let's just stop on that one for a second and think about it. I want that to sink in — use of grossly excessive force. Infliction of lethal wound after the victim is felled. Think about that. These are the circumstances that you can infer

premeditation and deliberation specifically.

You heard what — even he said that he got on top of her and beat her in the back of the head with that tire iron until she stopped. He crushed her skull. Brutal or vicious circumstances of the killing. This is one of the most brutal murders this community has seen.

Defendant objected but was once again overruled. Taken together, Defendant claims, these challenged remarks amounted to an improper infusion of the prosecutor's personal opinion, driven by reference to matters outside the record to appeal to the jury's passion and prejudice. This, Defendant contends, is reversible error in light of *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991), where our Supreme Court recognized it was improper for a prosecutor to describe the crime as "a first degree murder of one of the most heinous kind I have ever come into contact with." *Id.* at 186, 400 S.E.2d at 419. While acknowledging that the *Small* Court ultimately concluded that the statement at issue was not so grossly improper as to require a new trial, Defendant contends that a different result is warranted here because, unlike the defendant in *Small*, he timely objected to these remarks at trial and thus the more rigorous *ex mero motu* standard applied in *Small* is inapplicable.

Defendant is correct that the *ex mero motu* standard does not apply here. Nevertheless, this does not automatically mean that the trial court's ruling "could not have been the result of a reasoned decision." *See Dial*, 122 N.C. App. at 308, 470 S.E.2d at 91. In the present case, based on the record before us and in light of our prior decisions, we do not believe that the trial court abused its discretion when it overruled Defendant's objections.

First, as our Supreme Court has recognized, "prosecutors are given wide latitude in the scope of their argument" and may "argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Goss*, 361 N.C. 610, 626, 651 S.E.2d 867, 877 (2007) (citation and internal quotation marks omitted), *cert. denied*, 555 U.S. 835, 172 L. Ed. 2d 58 (2008). Furthermore, "[s]tatements or remarks in closing argument must be viewed in context and in light of the overall factual circumstances to which they refer." *Id.* (citation and internal quotation marks omitted). Our Supreme Court has also held that "hyperbolic language is acceptable in jury argument so long as it is not inflammatory or grossly improper." *State v. Lloyd*, 354 N.C. 76, 115, 552 S.E.2d 596, 623 (2001) (citation omitted).

Here, the full context of the prosecutor's closing argument demonstrates that the challenged remarks were supported by the evidence and had a proper purpose. Indeed, the evidence introduced at trial supported the prosecutor's assertion that this murder of a 74-year-old woman by tire iron was, in fact, brutal. *See Small*, 328 N.C. at 186, 400 S.E.2d at 419 (ruling that prosecutor's description of the murder as "a first degree murder of one of the most heinous kind I have ever come into contact with" was not so grossly improper as to require a new trial, in part because the evidence in the record supported the characterization of the murder as "heinous"). Further, these challenged remarks related to the State's theory of the case — that Defendant acted intentionally and with premeditation and deliberation — which Defendant put directly at issue by claiming he lacked capacity. As our Supreme Court has recognized, the brutality of the crime and the infliction of blows after the victim was felled are both circumstances to consider regarding issues of premeditation and deliberation. *See State v. Smith*, 357 N.C. 604, 616, 588 S.E.2d 453, 461 (2003). Thus, we hold the trial court acted within its discretion in overruling Defendant's first two objections.

Finally, Defendant argues the trial court abused its discretion by overruling his objection during the State's closing argument when the prosecutor argued:

> At a minimum, 30 blows to Patricia Stevens and he's aiming for her head and she's trying to fend him off. And then at least eight blows to the head, and you saw the pictures, he was on top of her and he crushed her skull in. And he wants to come in and say, "I'm sorry, I didn't mean it, it was an accident"? That's an insult to the law, it's an insult to these family members, it's an insult to your intelligence.

On appeal, Defendant argues that this remark improperly commented on his decision not to testify and, by using the word "accident," attributes to him a defense he did not raise. We note first that while it is indeed improper for a prosecutor to comment on a defendant's decision not to testify, it is difficult to discern how this remark could be construed as such. Further, our prior decisions make clear that, as a general matter, "a trial court cures any prejudice resulting from a prosecutor's misstatements of law by giving a proper instruction to the jury." *Goss*, 361 N.C. at 626, 651 S.E.2d at 877. However, we need not reach the merits of Defendant's claims because this issue has not been properly preserved for appellate review. The record shows that at trial, Defendant's counsel explained that the basis for his objection to this remark was

the reference to the "insult to the family." Since "[t]he theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions," Defendant cannot now change the basis of his objection and assert a new theory for the first time on appeal. *Benson*, 323 N.C. at 322, 372 S.E.2d at 535. Defendant's challenges based upon the prosecutor's closing argument are overruled.

We hold that Defendant received a fair trial free from reversible error.

NO ERROR.

Judges CALABRIA and ELMORE concur.